Deceased Appellant by Randall Moon v. Dr. Theresa at Central Illinois Radiological Associates, LPD, Appellees by Craig Unruh. Mr. Moon? Yes, John. Good morning. My name is Randall Moon. I'm the plaintiff in this case. I'm also an attorney licensed in Illinois, but I have not practiced here for over 20 years. I live in Pennsylvania. I'm sorry. I said we'll forgive you. Okay. Anyway, although I have some connection to the court from a standpoint, I used to practice law when I did here in Illinois with Bill Wambacher, who was a justice here for approximately five or six years from 1984 to 1990. I saw his picture up when I came in, and then you think, geez, 1990, that was really soon, but it's 25 years ago. 1980 is 30 years ago. I'm getting old. The reason I'm here is because I appealed the decision that the trial court made in this case. This is a case for malpractice against the defendants, Dr. Rohde and her group. The facts of the case are my mother was admitted to Proctor Hospital to the emergency room on May 18th of 2009. She was diagnosed as having a rectal prolapse. A surgeon saw her, Dr. Williams, and treated her with a surgical procedure, which I believe is called a perineal protectomy, and that was on the 20th of May of 2009. He left because he had an out-of-town engagement, and he was an associate of his, Dr. Solomon, who took over the care of my mother. She got worse. There was a couple imaging studies done, which were read by the defendant here, Dr. Rohde, on the 23rd and the 24th of May of 2009. My mother passed away at the hospital on May 29th of that year. Subsequent to that, I was appointed as executor of the estate, and in that capacity, I had requested the medical records of my mother in the course of administrating her estate. I filed a malpractice action against the two surgeons in May 10th of 2011, having received a report from a medical doctor indicating that there was negligent conduct May 2nd of 2011. During the course of pursuing that action, I had submitted the imaging studies to one of my experts, Dr. Dachman, a radiologist from the University of Chicago, and that was in February of 2013. He reviewed those documents and indicated to me or gave me a letter that he felt that Rohde had misread the imaging study, which showed that there was a leak from the surgical site into the abdominal cavity. I subsequently filed suit, in this case, on March 18th of 2013. When I filed the suit, the defendants filed a motion to dismiss pursuant to Rule 2-619A5, basically a motion for summary judgment. And the trial court granted their motion and dismissed the case with prejudice. I've cited in my brief three cases that I rely on for the proposition that the statute of limitations in this situation doesn't commence to run until the party has received an indication from a doctor that there has been negligent conduct. Now, I realize that the language of the statute, I believe, talks about wrongful conduct, I believe is the language. But in any event, I rely on three cases where the fact pattern is this, that there was, in this type, this is a situation that is, it's not a traumatic injury. Because what she did and what happened to her is she suffered, because of this breakdown of the surgical site, she suffered an infection and then her systems failed and she died of sepsis. So these cases that, where you have a non-traumatic type injury hold that, and the three cases are Young v. McKee and Wells v. Travis and Clark v. Gailey. In all three of those cases, the fact pattern is the plaintiffs, the court ruled that the statute of limitations does not start to run until the plaintiff had received a letter from a doctor saying that there was negligent conduct on someone's behalf. Now, the defendants really don't address those three cases in their brief, they only mention Young one time and that's not with respect to when the statute would start to run under the discovery rule. It's also important that the court dismiss this under the rule of the motion for summary judgment and my understanding of that rule is that the non-moving party receives the benefit, I mean the court can only move it if there are no disputed facts. And any inference under the facts, under the rule, has to be decided in the favor of the non-moving party, in this case myself. And the only facts that the court had when they made the decision was I'm a lawyer, in my capacity as executive of the estate, I requested the medical records of the hospital in 2010, and that I testified in my deposition March 8th of 2012 in the suit against Young v. the two surgeons in response to a question, how did my mother's death affect me, I stated that I did not think she had gotten good care in the hospital. Those are the only facts that the court had before it when it ruled in the motion for summary judgment in the favor of the plaintiffs. The fact that I'm a lawyer does not mean that the statute of limitations should run just because I'm a lawyer. The fact that I testified in a deposition more than two years after my mother's death, that I didn't think she got good care in the hospital, to me it can't be a basis for saying that I knew at the time of her death that she didn't get good care. I don't see how, on what basis the court could infer from what was before it that there was anything, that I knew anything about what happened to her at the time of her death. The defendants don't address the cases that I'm relying on for the proposition that the statute, the discovery rule applies, and in this type of situation, a non-traumatic event doesn't start to run until the party has information that some negligent conduct had occurred. The defendants also rely in their brief on two cases, and I believe that those cases that they rely on aren't applicable to the present situation. One of them is the Beasley case, and in the Beasley case, there was a decision, but it was after a jury trial. That's not where we were at the time my case was dismissed. Beasley is not applicable to this case at issue because Beasley was decided by a jury after a separate trial on the issue of the statute of limitation defense. The principal issue for the jury was whether within the meaning of section 13-212, the plaintiffs knew or through the use of reasonable diligence should have known by November 28, 1981, that Darlene had been injured by the defendant's negligent treatment. The appellate court ruled based on the evidence presented that the jury could probably have found that the plaintiff knew or should have known. But that's not what happened here. We didn't have a jury trial. We had a motion on a 2619 rule, and that requires everything to be, if there's an inference, to be in my favor as opposed to the defendant's favor. I'm done. Thank you, Mr. Norman. Thank you, Your Honors. My name is Craig Onrath. I represent the defendants' appellees. The plaintiff's decedent passed away in May 2009, and in a timely filed complaint, a deposition taken in a timely filed complaint against two physicians involved with her medical care, plaintiff's counsel testified that as of the time of her death, he suspected that she had received inadequate medical care and treatment. Now, to me, that right there triggers the statute of limitations. Now, counsel had just finished referencing the Beasley case, and it's true there was a jury trial in that case, but the fundamental principles that are enunciated in Beasley remain the same regardless of the circumstances they were brought up. Beasley, relying on the Illinois Supreme Court's decision in Witherell, held that the limitation period begins to run when the claimant realizes that they may not have been receiving proper diagnosis or treatment. Well, that's what we have here. We submit that the limitations period began to run, or should have begun to run, at the time of her death. Now, this is a difficult case here. You know, I don't mean to say that this is cut and dry. The fundamental rule underlying all of these things, these cases, is that the limitations period begins to run when the plaintiff knows that an injury was wrongfully caused. Well, that's pretty vague, and the courts have struggled with what that phrase means. And I cited a decision authored by Justice Greene of the Fourth District where he admitted it. He said, this is a difficult thing to pin down. And my review of the case law is that we seem to, our courts seem to know more about what it doesn't mean than what it does. Well, what do we make of the language that it shall be brought no more than two years after the date on which the claimant has been convicted? The plaintiff knew, or to the use of reasonable diligence, should have known or received notice in writing of the existence of the injury or death for which damages are sought in the action. Of what import is that language? I think it's a key part of this case. It brings into account a reasonable diligence. Now, we submit that the plaintiff was put on notice of an action, that something was wrong. The language I quoted to you talks about, note the existence of the injury or the death, not the cause of the injury or death. So does that language mean anything? Our courts have interpreted that to mean that that statute does not begin to run, or that knowledge of the existence of a cause of action is not necessary for that limitations period to run. The courts have also interpreted that statute to say that it does not mean that the claimant must have knowledge that a specific defendant's conduct was negligence. The courts have been uniform in interpreting that statute to mean that plaintiffs need not have knowledge that an actionable wrong has been committed. Our opposing counsel bases his case on the notion that he had no idea that the limitations period began to run when the consulting firms gave him a verbal report over the phone saying, we think there's been some negligence here. And that lies in direct contrast with every court decision that has interpreted the statute that you just mentioned. I think it's also important to point out that we cited two cases in our brief where courts have held, you know, looking for an indication that a claimant understands that something's wrong here, something really needs to be done here. When does that limitations period begin and force me to investigate further? And they found hiring an attorney is sufficient grounds for establishing that the limitations period has begun to run. Because at that point, when you go to hire an attorney, clearly you suspect that something has gone wrong. Now the Beasley, I'm sorry, not Beasley, the Urkel, the Holy Cross decision. In that case, the court said that the limitations period begins to run when plaintiff became aware of the possibility that someone was at fault. And that's where, that ties right in with hiring an attorney. Why would you hire an attorney unless you suspected there was a possibility someone was at fault? Now, counsel is acting as his own attorney, so he had no need to hire an attorney. But he did exactly what every attorney would have done had he received a call from counsel. That attorney would have immediately sought the medical records. What is the possible significance of the fact that there are two levels of negligence here? There's first the doctors, but Dr. Rohde was a whole different level of negligence. How does that play into your argument? I don't know that it really does. The complaint against the two physicians, Salamath and, the name escapes me, was tightly filed. There's no doubt about it. It was filed within two years of her death, I think. And as I understand it, it was during the prosecution of that claim, during discovery, that, oh, I think a year, year and a half into that case, the deposition was taken of one or more of the defendant physicians, and that's when Dr. Rohde's name first came up. I don't know that that's of any significance to our case. I think it certainly calls into question the abilities of the consulting firm that reviewed his medical records, or the deceased's medical records, because why didn't they catch this? Why did he have to wait? But I don't see how it has any relation to our case at all. We submit that even if the court finds that his declaration, that he suspected something was wrong upon her death, if that's not sufficient, then taking the first steps toward litigation, asking for those medical records, that's a clear indication that the limitations period had begun to run. At that point, he must have known of the possibility that there had been a problem here. Otherwise, why would he have asked for those medical records? And this is where the due diligence part comes in, in Section 13-212 of the Code. It says that no action shall be filed more than two years after the date claimant knew, or through the use of reasonable diligence should have known, of the existence of the injury or death. Now look at the chronology of this case. The plaintiff suspected that medical care was deficient at the time of death. He was appointed executor of the estate one month later and waited nine months to request medical records. Then he waited an additional 14 months before he sent those medical records off to the consulting firm. Now I'm sure there was some time lapse in there to obtain the records, but 14 months, let's call it eight, nine months, it was a significant delay before he even sent these records to the consulting firm. So I think we have a serious problem with lack of diligence here. Opposing counsel's argument is based on the notion that the limitations period did not begin until he received that phone call from the consulting firm. Ask yourself, what would have happened if instead of waiting nine months to obtain the medical records, what if he'd waited three years? And instead of waiting 14 months to send those records, forward them to a consulting firm, what if he'd waited three years? So now we're up to six years. Under Plano's theory of the case, that's entirely appropriate. There's no problem with that. There's a point in my brief, and I really struggled trying to find the right word for this. It said if we adopt opposing counsel's theory of the case, we allow claimants to engineer the statute of limitations. Basically, claimants get to decide when the limitation period begins to run, because they can wait as long as they want to obtain medical records and wait a little bit longer, send those to a consulting firm. It places control over the limitations period in the hands of the claimant, and that's where we have an argument with that. Now, I do want to ensure that the Court understands that I am not, to any extent at all, suggesting that opposing counsel has acted unethically here. However, under the statute, we do have a requirement of due diligence. I don't think that was met, and even if it had, even if we ignored due diligence, the fact remains that in February of 2010, he requested the medical records of the decedent, and to my mind, I find the conclusion inescapable that the two-year statute of limitations began to run on that date. If there are no further questions from the Court, we urge the Court to affirm the trial court's order granting summary judgment. Thank you. Thank you, Mr. Enright. Basically, I want to address the issue of what the counsel is trying to do is he's trying to say that I knew at the time of my mother's death that there was negligence done, and that's not the fact, and I never said that, and he's misconstruing the record. If he can show me where that I knew on the date of her death, or I said on the date of her death that she got bad treatment, and I suspected something, I'll give him a million dollars. I'll tell you what. Let me ask you this. He didn't misconstrue that, okay? But as I understand the law, we have two-year statute of limitations, and then you have a four-year statute of repose, and so if I had been late, that's regulated, because once I get to four years, it doesn't matter. So you have something that regulates that. I don't know where he got the six years, how I would get to be six years, but to me, you've got a two-year statute of limitation, and a four-year statute of repose. The outside limit is four years. If you don't do something within four years, you're out of luck. Well, let me ask you this. So you're saying the first two years is just a given? No, it's not a given, but that's what the law provides. I mean, that's what they say the statute of limitations is, two years. Well, in 212, in the first part of the statute, it says, Shelby brought no more than two years after the date on which the claimant knew or through the reasonable diligence should have known or received notice in writing of the existence of the injury or death for which, what's that language mean, anything? Well, I would have to say, Your Honor, that the cases that I've relied on, and as far as I know, and I mentioned them, those three cases, the courts determined that the statute didn't run until they had that letter. Okay? I mean, how should that language be interpreted or how it has been interpreted? I'm not aware that, to answer your question, I can't give you a good answer. All right? But my understanding of the statutory scenario would be, okay, I have to file the negligence action. I have two years from the date of the occurrence to file it. You've got an outside statute which says four years statute of repose. You have the discovery rule that, to me, works between two years and four years. Once you get beyond the statute of repose, you're out of luck. I mean, that's a simplistic view, but that's how I rationalize it. And in this case, and, you know, to try to say that I did something nefarious, I mean, I know I understand that, but that's what they're implying, because if I hadn't sent the stuff to Dr. Dackman in the context of the action against the surgeons, you know, and he reviewed it, I would have never known that I had any type of action against the radiologists. And how would you discover that? You know, I mean, every time, I mean, you have to hire six experts that could go through all the medical records. If you think that there's a problem, I don't know. So it was just for two of us. Thank you. Thank you, Mr. Merriman, and thank you as well, Mr. Von Rath. We'll take this matter under advisement and get back to you with a written disposition within a short day. We'll now take a short recess.